UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

JoAnn L. Brauer,

    Plaintiff,

v.                                         Civil Action No. 2:11-CV-141

Michael J. Astrue,
Commissioner of Social Security,

    Defendant.

## OPINION AND ORDER
(Docs. 12, 20)

Plaintiff Joann Brauer brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. Pending before the Court are Brauer's motion to reverse the Commissioner's decision (Doc. 12), and the Commissioner's motion to affirm the same (Doc. 20).

For the reasons stated below, the Court DENIES Brauer's motion, and GRANTS the Commissioner's motion.

## Background

Brauer was forty-six years old on her alleged disability onset date of November 18, 2004. She has a college education, and worked as a pharmacist for over twenty years. She also held various short-term jobs, including as a postal worker and a customer service representative at a fabric store. During the alleged disability period,

Brauer did volunteer work on a part-time basis for the Humane Society, and attended church functions and fundraisers. She is divorced and lives alone.

In November 2004, Brauer lost her pharmacist license when it was discovered that she had been stealing hydrocodone from the pharmacy where she worked. (AR 37, 424, 427.) Years prior, in 1996, Brauer's pharmacist license had been suspended for a period of six months, again due to her stealing narcotics from the pharmacy where she worked. (*Id.*) Brauer has a long history of depression, which worsened when she lost her pharmacist job in 2004. She has had three suicide attempts which required medical attention – in 1994, 1996, and 2006, all by means of a drug overdose. (AR 408, 424-25.) She testified at the administrative hearing, however, that she has attempted suicide on at least twenty-five occasions. (AR 45.) Brauer also has a long history of opiate abuse and alcoholism, and has attended Alcoholics Anonymous. (AR 409, 411, 442, 444.) The record reflects that, since 2004, she has had periods where she is functioning well, but on multiple occasions, these periods have been followed by periods of rapid decompensation related to a substance abuse relapse. These periods of relapse are often characterized by deep depression accompanied by suicidal ideation and suicide attempts.

In addition to her mental and substance abuse problems, Brauer also has diabetes, and suffers from back pain, foot pain, numbness and tingling in her hands, and excessive sweating. In 2008, she was diagnosed with sciatica (AR 542-43); and a July 2008 MRI revealed disc herniation, central canal narrowing, and degenerative disc disease with

facet arthropathy[1] (AR 656, 687).  She attended physical therapy, had epidural steroid injections, and underwent hypnosis to address her back pain.  At the administrative hearing, Brauer stated that this pain had not been a problem since approximately the summer of 2009, as her hypnotherapist had taught her how to control it.  (AR 41-42.)

In September 2008, Brauer filed an application for disability insurance benefits.  Therein, she claimed that the following illnesses, injuries, or conditions limited her ability to work from the alleged disability onset date of November 18, 2004: "[s]evere depression, stress, anxiety, several suicide attempts ending in hospitalization, . . ., diabetes, high blood pressure, high cholesterol, carpel tunnel, [and] back problems."  (AR 171.)  She further explained that, although she had worked "as a driver for a woman with a medical condition" after the alleged disability onset date, the job was only "temporary" and she stopped working on a full-time basis on April 20, 2007.  (*Id.*)  Brauer's application was denied initially and on reconsideration, and she timely requested an administrative hearing.  The hearing was conducted on September 2, 2010 by Administrative Law Judge ("ALJ") Edward Hoban.  (AR 27-70.)  Brauer appeared and testified, and was represented by a non-attorney representative.  A vocational expert also testified at the hearing.

On December 23, 2010, the ALJ issued a decision finding that Brauer's substance use disorder was "a contributing factor material to the determination of disability," and thus Brauer was not disabled within the meaning of the Social Security Act at any time

---

[1] Facet arthropathy is a disease of the facet joints in the spine resulting from degeneration and arthritis. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 149 (27th ed. 1988).

from her alleged onset date through the date of the decision. (AR 21.) A few months later, the Decision Review Board affirmed the ALJ's decision, rendering it the final decision of the Commissioner. (AR 1-3.) Having exhausted her administrative remedies, Brauer filed the Complaint in this action on June 21, 2011. (Doc. 3.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), meaning "the most [the claimant] can still do despite [his or her mental and physical] limitations," based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§

404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

When faced with a claimant who has a drug or alcohol addiction, such as Brauer here, the ALJ is required to consider an extra step in the five-step sequential evaluation. *Salazar v. Barnhart*, 468 F.3d 615, 622 (10th Cir. 2006). The Social Security Act states: "An individual shall not be considered to be disabled . . . if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); *see Porter v. Chater*, 982 F. Supp. 918, 921-22 (W.D.N.Y. 1997). Accordingly, if the ALJ finds that the claimant is disabled, and there is medical evidence of the claimant's drug addiction or alcoholism, the ALJ "must determine whether [that] drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(a). The "key factor" in this determination is "whether [the Commissioner] would still find [the claimant] disabled if [he or she] stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b)(1); *see Frankhauser v. Barnhart*, 403 F. Supp. 2d 261, 272 (W.D.N.Y. 2005).

Employing this sequential analysis, ALJ Hoban first determined that Brauer had not engaged in substantial gainful activity since her alleged onset date of November 18, 2004. (AR 14.) At step two, the ALJ found that Brauer had the following severe impairments: major depressive disorder, alcohol and opiate abuse, and degenerative disc disease of the lumbar spine. (AR 14.) The ALJ found that Brauer's "excessive sweating" was not a severe impairment, given that the condition did not appear to have interfered with Brauer's performance of daily activities. (*Id.*) At step three, the ALJ found that Brauer's impairments, including her substance use disorders, met sections 12.04 and 12.09 of the Listings. (AR 14-16.) The ALJ explained: "[T]he record shows that . . . when [Brauer] is abusing substances, she has difficulty maintaining sustained and persistent functioning in complex settings and even ordinary work environments." (AR 15.) The ALJ next found that, if Brauer stopped using substances, she would continue to have a severe impairment or combination of impairments; but none of these impairments or combination thereof would meet or medically equal a listed impairment. (AR 16.)

The ALJ then proceeded to determine Brauer's RFC, finding that she could perform light work, as defined in 20 C.F.R. § 404.1567(b), with the limitation that she could perform only "simple, repetitive tasks thereby eliminating all complex detailed work, and all jobs involving production pace, or rate/pace requirements, and factory type or assembly type work." (AR 17.) The ALJ further determined that Brauer was restricted from performing jobs requiring contact with the public, but could occasionally interact with coworkers and supervisors. (*Id.*) Given this RFC, the ALJ found that if

6

Brauer stopped the substance use, she would be unable to perform her past relevant work as a pharmacist. (AR 19.) Based on testimony from the vocational expert, however, the ALJ determined that if Brauer stopped the substance use, there would be a significant number of jobs in the national economy that she could perform, including office helper, office mail clerk, and chambermaid. (AR 20.) The ALJ concluded that Brauer would not be disabled if she stopped the substance use, and thus had not been disabled from the alleged onset date through the date of the decision. (AR 21.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual

review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should consider that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Brauer argues that the ALJ misstated certain objective medical evidence, resulting in an erroneous step-three finding regarding whether her impairments or combination of impairments met or medically equaled the requirements of Listing 1.04. (*See* Doc. 13 at 5-6.) She further argues that the ALJ erred in his credibility determination because he failed to weigh Brauer's subjective complaints of pain and failed to provide specific findings to discredit her. (*Id.* at 6-9.) The Court finds each of these arguments unpersuasive, as explained below.

I.      **Listing 1.04 and ALJ's Misstatement of Objective Medical Evidence**

The ALJ found that Brauer's back impairment did not meet the requirements of Listing 1.04, the listing for disorders of the spine, because "[t]he record . . . does not contain any evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal

8

stenosis." (AR 17.) Brauer asserts that this statement "is simply not true," and that in fact, diagnostic evidence demonstrates that Brauer met the requirements of Listing 1.04. (Doc. 13 at 5.)

For a claimant to qualify for benefits by showing that his or her impairment meets a listing, the impairment "must meet *all* of the specified medical criteria" for the particular listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). Likewise, for a claimant to qualify for benefits by showing that his or her unlisted impairment or combination of impairments is "equivalent" to a listed impairment, the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* at 531 (emphasis in original). The Social Security Administration has explained that a determination regarding whether a claimant's impairment or combination of impairments is medically the equivalent of a listed impairment "must be based on medical evidence demonstrated by medically accepted clinical and laboratory diagnostic techniques, including consideration of a medical judgment about medical equivalence furnished by one or more physicians designated by the Secretary." SSR 86-8, 1986 WL 68636, at *4 (1986), *superseded on other grounds* by SSR 91-7c, 1991 WL 231791 (Aug. 1, 1991). For a claimant to meet or equal the severity of Listing 1.04, the claimant must suffer from:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy

with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1, Listing 1.04.

Brauer cites to only one piece of objective medical evidence to support her Listing 1.04 argument – the July 2008 MRI described above. (*See* Doc. 13 at 5-6 (citing AR 535, 731-33).) The Court agrees that the ALJ erred, in part, by stating at step three that "[t]he record . . . does not contain any evidence of nerve root compression, spinal arachnoiditis, or *lumbar spinal stenosis*." (AR 17 (emphasis added).) In fact, the July 2008 MRI showed "central canal narrowing" (AR 656, 687)[2], which is essentially the same as "lumbar spinal stenosis," defined as "[a] narrowing of the spinal canal," J.E. SCHMIDT, ATTORNEYS' DICTIONARY OF MEDICINE S-108246 (2009), *available at* Lexis DICMED.

But to meet the requirements of "[l]umbar spinal stenosis" under Listing 1.04C, as quoted above, Brauer would also have to suffer from "pseudoclaudication [(intermittent

---

[2] In an office note, Dr. Lan Knoff described the MRI as follows: "MRI of the lumbar spine on July 17, 2008 noted to have . . . *[c]entral canal narrowing* at L3-L4, L4-L5[,] and L5-S1." (AR 704 (emphasis added).)

limping brought on by walking)], established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and *resulting in inability to ambulate effectively*." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 1.04C (emphasis added). "Inability to ambulate effectively" is defined in the Listings as follows:

> an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

*Id.* at § 1.00(B)(2)(b)(1). There is no indication in the July 2008 MRI or elsewhere in the record that, despite the finding that Brauer had central canal narrowing, her ability to walk was compromised by her back problems. Rather, the record clearly demonstrates that Brauer was able to effectively ambulate without assistive devices during the alleged disability period. For example, in September 2007, a medical provider reported that Brauer "started to exercise by walking with [her cat in] a stroller . . . . She walks for a mile three to five times a day. Started this in July [and] does this without any problems." (AR 746.) In July 2008, an Emergency Room Report recorded that Brauer was "able to walk with her heels and her toes without signs of weakness." (AR 738.) Approximately one month later, a medical provider noted that Brauer should "continue with her current exercise program of walking." (AR 690.) In a May 2009 treatment note, another medical provider stated that Brauer "ha[d] been walking regularly with her cats and ha[d] extended her walk so that she [got] more exercise." (AR 772.) Finally, at the September

2010 administrative hearing, Brauer herself testified that she could walk for "a couple [of] hours." (AR 48.)

There is also no medical evidence demonstrating that Brauer suffered from: "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," as required by Listing 1.04A; or "[s]pinal arachnoiditis[3] . . . resulting in the need for changes in position or posture more than once every 2 hours," as required by Listing 1.04B. 20 C.F.R. pt. 404, subpt. P, app., Listing 1.04. Therefore, the evidence does not support a finding that Brauer met the requirements of Listing 1.04 during the alleged disability period. Even if the ALJ failed to set forth a specific and correct rationale in support of this conclusion, the Second Circuit has held that the absence of an express rationale does not prevent the court from upholding an ALJ's determination regarding the plaintiff's alleged listed impairment, if "portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence." *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982). Here, substantial evidence supports the ALJ's step-three determination; and thus the ALJ correctly found that Brauer did not have an impairment or combination of impairments that met or medically equaled Listing 1.04 during the alleged disability period.

## II. ALJ's Credibility Assessment

Brauer next argues that the ALJ erred in his credibility determination because he failed to weigh Brauer's subjective complaints of pain and failed to provide specific

---

[3] "Spinal arachnoiditis is caused by the inflammation of the arachnoid lining in the spinal cord. The inflammation causes constant irritation, scarring, and binding of nerve roots and blood vessels." *Corson v. Astrue*, 601 F. Supp. 2d 515, 526 (W.D.N.Y. 2009).

findings to discredit her. (Doc. 13 at 6-9.) The Commissioner responds by stating that the ALJ properly evaluated Brauer's allegations and "clearly stated" the reasons for his credibility assessment, which assessment is supported by substantial evidence. (Doc. 20 at 13.)

It is the province of the Commissioner, not the reviewing court, to "appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). If the Commissioner's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints. *Id.* (citing *McLaughlin v. Sec'y of Health, Educ., and Welfare*, 612 F.2d 701, 704 (2d Cir. 1982)). "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (Jul. 2, 1996). An important indicator of the credibility of a claimant's statements is their consistency with other information in the record, including the claimant's medical treatment history. *Id.* at *5, 7.

Here, the ALJ determined that Brauer's statements regarding the intensity, persistence, and limiting effects of her symptoms "are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment." (AR 18.) This determination is supported by several of the ALJ's specific findings. First, the ALJ accurately noted that Brauer reported to a medical provider in December 2008 that her pain was "gone now." (AR 19 (citing AR 639).) In the cited report, the provider also stated that Brauer had fallen down stairs, but since then, her back had improved. (AR 639.) Similarly, in

March 2009, a provider stated that Brauer had no pain at the time, and noted that hypnotherapy was helping and that a neurosurgeon had stated her condition "could resolve on its own." (AR 641; *see also* AR 653 ("[d]oing reasonably well" and getting "good results" after seeing clinical hypnotist), 654 (having "good results" from seeing counselor/hypnotist and electing not to pursue surgery).) The ALJ also properly considered that, at the September 2010 administrative hearing, Brauer "acknowledged that her pain is better, but . . . stated that she still gets aches." (AR 19.) In fact, Brauer testified that her back "ha[d] been not a problem for a little over a year" (AR 42), and that it would ache only "when [she] d[id] something like a lot of yard work, . . . trying to get all [her] weeding done in one pop[,]" or "vacuum[ing] the whole house." (AR 47; *see also* AR 770 (telling hypnotherapist in January 2009 that her back pain was "minimal during the day").)

The ALJ also accurately and properly based his credibility determination on the fact that "the record is replete with examples of [Brauer] participating in a variety of activities of daily living and hobbies including volunteering at the Humane Society, gardening, adopting and caring for four cats, and taking computer classes." (AR 19; *see also* AR 18 (citing AR 600 ("feels much better," "working on her house/decorating[, crafting], and volunteering at humane society"), 601("feeling good . . . – gardening, doing crafts, volunteering at humane society")), 769 (treats her cats as children), 772-73 (enrolled in computer class, hoping to get position at Humane Society, walking regularly with her cats), 789-90 (involved in church and Humane Society activities).) The record also reveals that, despite Brauer's complaints of disabling pain, she was able to engage in

activities such as shoveling snow (AR 691) and applying wallpaper (AR 697).[4] It was proper for the ALJ to consider these daily activities in making his credibility determination. Although "a claimant need not be an invalid to be found disabled," *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998), "in assessing the credibility of a claimant's statements, an ALJ must consider . . . the claimant's daily activities," *Calabrese v. Astrue*, 358 F. App'x 274, 278 (2d Cir. 2009); *see* SSR 96-7p, 1996 WL 374186, at *3, 5-6 (July 2, 1996).

Accordingly, the Court finds that the ALJ applied the correct legal standard in assessing Brauer's credibility, and substantial evidence supports the ALJ's credibility determination.

## Conclusion

For these reasons, the Court DENIES Brauer's motion (Doc. 12), GRANTS the Commissioner's motion (Doc. 20), and AFFIRMS the decision of the Commissioner.

Dated at Burlington, in the District of Vermont, this 20th day of April, 2012.

/s/ John M. Conroy  
John M. Conroy  
United States Magistrate Judge

---

[4] Although not explicitly considered by the ALJ in his credibility determination, the record also reflects that there were reasons other than her alleged impairments preventing Brauer from working during the alleged disability period, including her failure to find a job that she felt comfortable doing or that she was qualified to do and her fear of losing disability insurance benefits. (*See, e.g.,* AR 49 (unsure if she would have been able to do job at "King Arthur Flower" because she "never tried"), 55 (unable to obtain paying job at Humane Society because she needed more computer experience), 581 (provider stating that Brauer's "reluctance about work is more to do [with] professional identity than depression"), 591 (turned down job offer "due to insurance issues"), 596 (provider stating that Brauer was "afraid if she trie[d] to work she [would] lose her benefits").)

15